WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Robert L. Berry | ) | |
| Plaintiff, | ) | No. CIV 04-2922 PHX RCB |
| vs. | ) | O R D E R |
| John E. Potter, Postmaster General, U.S. Postal Service | ) | |
| Defendant. | ) | |

On December 17, 2004, Plaintiff filed suit against the United States Postal Service (the "Postal Service"), alleging that he was improperly denied a promotion either on the basis of his age or in retaliation for previous complaints filed with the Equal Employment Opportunity Commission ("EEOC") in violation of the Age Discrimination in Employment Act ("ADEA") and Title VII.  Compl. (doc. # 1).  On July 15, 2005, the United States filed a Motion to Dismiss for Improper Venue, or in the Alterative to Transfer Case (doc. # 9), arguing that the proper forum for Plaintiff's Title VII claim is the Northern District of Ohio, not the District of Arizona.  Plaintiff opposes transfer.  Resp. (doc. # 10).  Having

1 | carefully considered the arguments raised, the Court now rules.

2 | **I.   BACKGROUND**

3 | Plaintiff, born 1952, Compl. (doc. #1) at 2, has apparently
4 | been in the employ of the Postal Service for the past thirty years,
5 | and becomes eligible for retirement in October 2007, Resp. (doc. #
6 | 10) at 3.  He currently serves at a duty post in Glendale, Arizona
7 | as the Manager of Remote Encoding Operations, a position he has
8 | held since 1995.  See id. at 2-3.

9 | During his employment with the Postal Service over the years,
10 | Plaintiff filed complaints with the EEOC.  The most recent of these
11 | complaints concerns his non-selection for a Plant Manager position
12 | in Akron, Ohio, which is at the center of the present controversy.
13 | Compl. (doc. # 1) at 2; Resp. (doc. # 10) at 1-2.  Following two
14 | and a half years of additional training and work assignments,
15 | Plaintiff was listed as "ready" to assume the responsibilities of
16 | the position, but was ultimately passed over for the promotion in
17 | favor of a thirty-five-year-old candidate who was listed as "not
18 | ready."  Compl. (doc. # 1) at 2.  After exhausting administrative
19 | remedies, Plaintiff filed the present action alleging that the
20 | Postal Service improperly discriminated against him either on the
21 | basis of his age or in retaliation for his previous EEOC complaints
22 | in violation of the ADEA and Title VII.

23 | **II.   DISCUSSION**

24 | The United States contends that Plaintiff's Complaint should
25 | be dismissed for improper venue pursuant to Federal Rule of Civil
26 | Procedure 12(b)(3) because the District of Arizona is not a proper
27 | forum for Plaintiff's Title VII claim.  Mot. (doc. # 9) at 2-3.
28 | Alternatively, the United States petitions the Court to transfer

1   this case to the Northern District of Ohio pursuant to either 28
2   U.S.C. § 1406(a) or 1404(a).[1]  Id. at 3-5.

3       **A. Motion to Transfer Venue**

4       A transfer request pursuant to section 1406(a) necessarily
5   turns upon the same underlying issue as a motion to dismiss
6   pursuant to Rule 12(b)(3)-- whether the action lays venue in the
7   wrong judicial district.  The Court will therefore begin its
8   discussion by turning to the United States' request to transfer
9   venue pursuant to section 1406(a).

10      **1. Transfer Pursuant to 28 U.S.C. § 1406(a)**

11      Under section 1406(a), "a case laying venue in the wrong
12  division or district" must either be dismissed, "or if it be in the
13  interest of justice," transferred "to any division or district in
14  which it could have been brought."  28 U.S.C. § 1406(a).  Before
15  examining the propriety of venue in this District, however, the
16  Court will address the United States' pending request for leave to
17  file a sur-reply (doc. # 13) directed to that issue.

18      **a. The United States' Request for Leave to File a Sur-Reply**

19      Plaintiff has filed an unauthorized second response (doc. #
20  12) in which he argues that venue is appropriate in this District
21  under the general venue statute, 28 U.S.C. § 1391(e).  The United
22  States is correct in noting that a party is generally entitled to
23  only one responsive memorandum, and that Plaintiff should therefore
24  be barred from raising new arguments in his unauthorized second
25  response.  See Mot. to Disregard Pl.'s Additional Resp. (doc. #

26  _____

27      [1]   The Title VII venue statute explicitly recognizes the
    possibility of venue transfers pursuant to sections 1404 and 1406.
28  See 42 U.S.C. § 2000e-5(f)(3).

13).  Alternatively, the United States petitions the Court for leave to file a sur-reply.  Id.

For present purposes, the Court can conclude that Plaintiff's argument under section 1391(e) would fail without inviting any further response from the United States.  The appropriate venue for Plaintiff's Title VII claim must be determined based on 42 U.S.C. § 2000e-5(f)(3), not 28 U.S.C. § 1391(e).  This is because the general venue statute upon which Plaintiff relies is only operative "except as otherwise provided by law," and 42 U.S.C. § 2000e-5(f)(3) provides otherwise for Title VII claims.  Accordingly, the United States' motion (doc. # 13), construed as a request for leave to file a sur-reply, shall be denied and dismissed as moot.

**b. Proper Venue for Plaintiff's Title VII Claim**

The fora available to Plaintiff for his Title VII claim must be determined in view of 42 U.S.C. § 2000e-5(f)(3) and its interpretive case law.  Under 42 U.S.C. § 2000e-5(f)(3), a Title VII claim may be brought in any judicial district in a state "in which the unlawful employment practice is alleged to have been committed, . . . in which the employment records relevant to such practice are maintained and administered, or . . . in which the aggrieved person would have worked but for the alleged unlawful employment practice."  42 U.S.C. § 2000e-5(f)(3); Johnson v. Payless Drug Stores, N.W. Inc., 950 F.2d 586, 587 (9th Cir. 1991).  Otherwise, the action may be brought in any judicial district where the defendant keeps its principal office.  42 U.S.C. § 2000e-5(f)(3).  The Ninth Circuit has held that, in failure-to-promote cases under Title VII, "venue is proper in both the forum where the employment decision is made and the forum in which that decision is

implemented or its effects are felt [by the plaintiff]."

Passantino v. Johnson & Johnson Consumer Prods., 212 F.3d 493, 506

(9th Cir. 2000).

In Passantino, a plaintiff who worked in Tacoma, Washington

alleged that she had been repeatedly passed over for several

promotions because of her gender.  Id. at 499-500.  The defendant

argued that New Jersey was the only permissible venue because that

was where the promotional decision was actually made.  Id. at 504.

The Ninth Circuit observed that such a narrow reading of the venue

rule would lead to the perverse result that, while other Title VII

complainants could sue where they were employed, those complaining

of a failure to promote would be required to litigate in far-away

places any time an adverse promotional decision was made in a more

distant office.  See id. at 505.  The court noted that the

increased burden of litigating in a federal court on the other side

of the country would be "inconsistent with the beneficent purposes

of Title VII.  Id.  Because "[p]laintiffs unlawfully denied a

promotion, like those discharged, feel the effects of their injury

where they actually work," the court concluded that venue was

proper in the Western District of Washington.  Id.

In the instant case, the United States maintains that venue is

not appropriate in this District primarily because (1) the alleged

unlawful employment practice-- presumably the adverse promotional

decision-- was committed by officials in Akron, and (2) Plaintiff

would have worked in Akron but for the adverse promotional

decision.  See Mot. (doc. # 9) at 3.  Both of these arguments fail.

It is clear from Passantino that the seat of power from which

an employer makes its employment decisions is not dispositive on

1  the issue of venue in Title VII cases when the aggrieved employee

2  works in a different state than the powers that control the

3  employee's advancement.  While an unlawful employment practice may

4  literally occur at a decision making level in another office, it

5  will also be deemed to occur for venue purposes where the plaintiff

6  works and suffers injury.  Therefore, even if the decision not to

7  promote Plaintiff was made by officials in Akron, that only

8  establishes the Northern District of Ohio as one possibility for

9  venue.  Another forum contemplated by <u>Passantino</u> is any judicial

10 district in the state in which Plaintiff was working at the time

11 the adverse promotional decision was made-- in this case, Arizona.

12    Plaintiff's response reflects that he was working in Glendale,

13 Arizona at the time he was most likely passed over for promotion.

14 Plaintiff maintains that he has been working as the Postal

15 Service's Manager of Remote Encoding Operations in Glendale for the

16 past ten years.  <u>See</u> Resp. (doc. # 10) at 2-3.  The United States

17 does not refute Plaintiff's assertion that he has been working in

18 Arizona for this period and, in fact, acknowledges his present

19 employment there.[2]  <u>See</u> <u>id.</u> at 3.  Although the decision not to

20 offer Plaintiff the promotion may have been made in Akron,

21 Plaintiff would have felt the effect of his injury in Arizona where

22

---

23    [2]  The declaration attached to the United States' motion alludes
24 to Plaintiff's past work in Cleveland, Ohio, but does not specify the
   time period of his tenure at that office.  <u>See</u> Mot. (doc. # 9), Ex.
25 A ("Breault Decl.") ¶ 5 (anticipated testimony of Michael B. Potts
   concerning Plaintiff's work at the Processing and Distribution Center
26 in Cleveland, Ohio).  Without a more specific reference to time, and
   in the absence of any challenge to Plaintiff's assertion that he has
27 worked in Arizona for the past ten years, the Court must conclude
   that the United States concedes that Plaintiff was employed in
28 Arizona during that time.

1   he was apparently working when the decision was made.  Therefore,

2   under Passantino, both the Northern District of Ohio and the

3   District of Arizona are appropriate venues for the Title VII claim.

4       Because venue appears to be proper in this District based on

5   the arguments raised, the United States' motion to transfer venue

6   pursuant to 28 U.S.C. § 1406(a) must be denied at this time.

7   However, because venue would also be appropriate in the Northern

8   District of Ohio, the Court must consider whether transfer is

9   appropriate under section 1404(a).

10      **2. Transfer Pursuant to 28 U.S.C. § 1404(a)**

11      Under section 1404(a), "a district court may transfer any

12  civil action to any other district . . . where it might have been

13  brought" when "the convenience of parties and witnesses" or "the

14  interest of justice" so requires.  28 U.S.C. § 1404(a).  The

15  decision of whether to transfer a case is within the broad

16  discretion of the district court.  Jones v. GNC Franchising, Inc.,

17  211 F.3d 495, 498 (9th Cir. 2000).  Such decisions require

18  "individualized, case-by-case consideration of convenience and

19  fairness."  Stewart Org. v. Ricoh Corp., 487 U.S. 22, 29 (1988)

20  (citation omitted).  Based on the parties' arguments, the factors

21  most relevant to the analysis of the present motion (doc. # 9)

22  include (1) Plaintiff's choice of forum; (2) public interest in

23  local adjudication of local controversies; (3) convenience of the

24  parties and witnesses; (4) the availability of compulsory process

25  to compel attendance of unwilling non-party witnesses; (5) the

26  differences in the costs of litigation in the two forums; and (6)

27  ease of access to sources of proof.  See Jones 211 F.3d at 498.

28  While these factors derive from the law of forum non conveniens,

- 7 -

1  section 1404(a) provides for greater flexibility and discretion.

2  See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 253 (1982).

3      The moving party bears the burden of establishing that the

4  balance of conveniences favors transfer.  Commodity Futures Trading

5  Comm'n v. Savage, 611 F.2d 270, 279 (9th Cir. 1979).  "The

6  defendant must make a strong showing of inconvenience to warrant

7  upsetting the plaintiff's choice of forum."  Decker Coal Co. v.

8  Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986).

9  Moreover, transfer must alleviate rather than merely shift

10 inconvenience to another party.  Id.

11 **1. Plaintiff's Choice of Forum**

12     Great weight is generally accorded a plaintiff's choice of

13 forum.  Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987) (citing

14 Tex. E. Transmission Corp. v. Marine Office-Appleton & Cox Corp.,

15 579 F.2d 561, 567 (10th Cir. 1978)).  This is particularly so in

16 cases arising under Title VII, which is governed by a venue statute

17 generally perceived as expanding the fora available to plaintiffs.

18 Cf. Passantino, 212 F.3d at 504 (finding that Title VII's broad

19 venue provision "was necessary to support the desire of Congress to

20 afford citizens full and easy redress of civil rights grievances")

21 (citation omitted).  When a more permissive venue statute applies,

22 the Ninth Circuit has held that the plaintiff's choice of forum is

23 entitled to greater deference as a matter of law.  See, e.g., Sec.

24 Investor Prot. Corp. v. Vigman, 764 F.2d 1309, 1317 (9th Cir. 1985)

25 (because the securities laws afford many options for venue,

26 defendants would have to make a stronger showing in order to

27 disturb the plaintiffs' choice of forum).

28     Although Plaintiff's choice of forum for his Title VII claim

- 8 -

1    may be similarly entitled to greater deference as a matter of law,

2    this view must be tempered by the fact that Plaintiff's ADEA claim,

3    which is governed only by the general venue statute, would not

4    command the same level of deference.  Nevertheless, for the reasons

5    explained more fully below, the Court is satisfied that the United

6    States has made a sufficiently strong showing that the conveniences

7    warrant transfer, notwithstanding the greater level of deference

8    contemplated by Passantino and Vigman.

9        **2. Public Interest in Adjudication of Local Controversies**

10        When an incident takes place within a judicial district,

11    courts often find there is a public interest in hearing the case

12    locally.  Residents within the Northern District of Ohio would

13    assuredly take a keen interest in staffing matters at the Postal

14    Service's Processing and Distribution Center in Akron.  However,

15    the Court must also remain sensitive to the interest of Arizona in

16    providing a forum for the protection of its residents including

17    Plaintiff.  Cf. Haisten v. Grass Valley Med. Reimbursement Fund,

18    784 F.2d 1392, 1399 (9th Cir. 1986) (holding that jurisdiction was

19    proper even though the defendant had absolutely no physical contact

20    with the forum state, because the defendant's policies had effects

21    in the state, and because the state had an interest in providing a

22    forum for the protection of its residents).[3]  Accordingly, the

23    ─────────────────

24        [3]   The Court is aware that personal jurisdiction disputes and
      venue disputes often turn on different issues.  However, where the
25    public interest of a state has led courts to conclude that the
      exercise of personal jurisdiction over a nonresident defendant would
26    comport with due process, this fact is illuminating as to the similar
      public interest considerations raised by section 1404(a).  See
27    Passantino, 212 F.3d at 505, n.8 ("Although we recognize that the
      issues involved in personal jurisdiction disputes are different from
28    the issues involved in venue disputes, it is clear that if exercising

1  Court concludes that the local interest in hearing this case in the

2  Northern District of Ohio, on its own, is insufficient to supersede

3  both the countervailing public interest of Arizona and the great

4  deference accorded Plaintiff's choice of forum.

5      **3. Convenience of the Witnesses**

6      The majority of the Postal Service's anticipated fact

7  witnesses reside or work within or near the Northern District of

8  Ohio.  Prospective witnesses with personal knowledge of the

9  circumstances surrounding the selection process for the Akron Plant

10 Manager position include the following Postal Service employees:

11 •    Kenneth F. Winters            Pittsburgh, Pennsylvania

12 •    Susan L. Marsh               Pittsburgh, Pennsylvania

13 •    David M. Patterson           Buffalo, New York

14 •    Thomas F. Kelley             Columbus, Ohio

15 •    Phillip R. Sindelar, Jr.     Painesville, Ohio

16 •    Christopher H. Smith         Warrendale, Pennsylvania

17 Breault Decl ¶ 5.  However, as each remains in the Postal Service's

18 employ, their location does not mandate transfer.  The Court

19 presumes the Postal Service can compel their attendance at trial in

20 Arizona.  See STX, Inc. v. Trils Stik, Inc., 708 F. Supp. 1551,

21 1556 (N.D. Col. 1988) (citing Galonis v. Nat'l Broad. Co., 498 F.

22 Supp. 789, 793 (D. N.H. 1980)) (discounting inconvenience to

23 party's employee-witnesses who can be compelled to testify).

24     In addition, the United States anticipates calling the

25 following former Postal Service employees:

26 _____

27 personal jurisdiction over a particular defendant would comport with
   due process, this fact provides support for reading an otherwise
28 ambiguous venue statute in harmony with the jurisdictional rule.").

1    •    Norman M. Callhoun            Indianapolis, Indiana

2    •    Sernia P. Richardson         Pittsburgh, Pennsylvania

3    •    Gary McCurdy                 Cranberry Township, Pennsylvania

4    •    Judson Zernechel             Canton, Ohio

5    •    Michael B. Potts             Copely, Ohio

6    Id.  Because these individuals are no longer employees of the

7    Postal Service, they cannot be compelled to appear at trial.   On

8    the other hand, transfer would bring at least two of the

9    prospective nonparty witnesses, Zernechel and Potts, within the

10   subpoena power of the Northern District of Ohio.   See Fed. R. Civ.

11   P. 45(c)(3)(B)(iii).

12       Plaintiff in turn emphasizes four prospective witnesses whom

13   he contends are important to his case-- an argument he raises for

14   the first time in an unauthorized second response.   See Second

15   Resp. (doc. # 12) at 2.   He fails, however, to indicate the names

16   of any of his prospective witnesses, the basis of their knowledge,

17   the anticipated subject matter of their testimony, or their

18   affiliation, if any, with the Postal Service.   See id.  Even if the

19   Court were to consider Plaintiff's untimely argument, the scant

20   information he has provided tends more to support transfer than to

21   demonstrate any significant value in retaining venue in this

22   District.   At least two of his prospective witnesses reside outside

23   Arizona, see Second Resp. (doc. # 12) at 2, placing them beyond the

24   reach of compulsory process in this Court if they were indeed

25   nonparty witnesses, see Fed. R. Civ. P. 45(c)(3)(B)(iii).

26   Moreover, transfer to the Northern District of Ohio would most

27   likely alleviate any inconvenience for Plaintiff's prospective

28   witness or witnesses located in Washington, D.C.

1    In short, Plaintiff belatedly suggests that the convenience of

2    his prospective witnesses should discourage transfer, but provides

3    no information about these individuals or their anticipated

4    testimony.   In contrast, the evidence before the Court demonstrates

5    that the individuals identified by the United States can testify to

6    the merits of Plaintiff's claims based on their personal knowledge

7    of the selection process for the Plant Manager position in Akron.

8    See Williams v. Bowman, 157 F. Supp. 2d 1103, (N.D. Cal. 2001)

9    (similarly finding that although both parties identified witnesses

10   in both districts, defendants identified individuals that would

11   likely testify to the merits of the lawsuit, indicating this factor

12   weighed in defendants' favor); see also Tel. Mgmt. Corp. v.

13   Goodyear Tire & Rubber Co., 5 F. Supp. 2d 896, 898 (transferring

14   venue in a contract case to the district where individuals who

15   worked on the contract at issue were located, including retired

16   individuals no longer subject to compulsory trial attendance).

17   Furthermore, for all that appears, the transfer sought by the

18   United States would most likely alleviate any inconvenience to

19   Plaintiff's prospective witness or witnesses located in Washington,

20   D.C.   Finally, while only Kelley, Potts, Sindelar, and Zernechel

21   reside in Ohio, the Court finds it would be more convenient for the

22   other individuals to travel to Ohio in lieu of Arizona.   See Int'l

23   Comfort Prods. v. Hanover House Indus., Inc., 739 F. Supp. 503, 506

24   (D. Ariz. 1989) (transferring suit to Pennsylvania where

25   defendants' witnesses resided primarily there and in New York).

26   Accordingly, the Court concludes that the convenience of the

27   witnesses weighs heavily in favor of the transfer sought by the

28   United States.   See id. at 507 ("The most critical factor to review

1  is the convenience of the witnesses.") (citing <u>L.A. Mem'l Coliseum</u>

2  <u>v. Nat'l Football League</u>, 89 F.R.D. 497 (C.D. Cal. 1981)).

3  **4. Availability of Compulsory Process**

4  Of the five prospective nonparty witnesses identified by the

5  United States, none reside in Arizona.  Breault Decl. ¶ 5.  Because

6  all of these individuals would fall outside the subpoena power of

7  any court in this District, <u>see</u> Fed. R. Civ. P. 45(c)(3)(B)(iii),

8  this factor offers no justification for this Court to retain venue.

9  Although the United States acknowledges that three of its five

10 prospective nonparty witnesses currently reside in Pennsylvania and

11 Indiana, it is apparent that the remaining two individuals would at

12 least be subject to compulsory process in the Northern District of

13 Ohio.  <u>See</u> Breault Decl. ¶ 5; Fed. R. Civ. P. 45(c)(3)(B)(iii).

14 Finally, at least two of Plaintiff's prospective witnesses reside

15 outside Arizona, <u>see</u> Second Resp. (doc. # 12) at 2, and would lie

16 beyond the reach of compulsory process in this Court if they were

17 nonparty witnesses, <u>see</u> Fed. R. Civ. P. 45(c)(3)(B)(iii).

18 Therefore, on balance, this factor favors transfer.

19 **5. Costs of Litigation**

20 The most significant witnesses-- those with personal knowledge

21 of the selection process for the Akron Plant Manager position-- all

22 reside in and around the Northern District of Ohio.  <u>See</u> Breault

23 Decl. ¶ 5.  Although Defendant would have to spend more money to

24 discover evidence and to secure the attendance of these witnesses

25 were the case to be tried in this Court, so too may Plaintiff whose

26 prospective witnesses reside not only in Arizona, but also in

27 Colorado and Washington, D.C.  <u>See</u> Second Resp. (doc. # 12) at 2.

28 On the other hand, Plaintiff contends that he would deplete a

1  year's worth of annual leave, thus impairing his retirement plans,

2  if he were to continue proceeding _pro se_ after a transfer to the

3  Northern District of Ohio.  Resp. (doc. # 10) at 3.  Because the

4  transfer sought by the United States would merely shift rather than

5  eliminate the inconvenience of litigation costs, this factor

6  neither favors nor disfavors transfer.  See Decker Coal Co., 805

7  F.2d at 843.

8      **6. Ease of Access to Sources of Proof**

9      In assessing the relative inconvenience to the parties in

10 gaining access to relevant sources of proof, the Court recognizes

11 that documentary evidence is substantially less costly to produce

12 than witness testimony.  In the present case, however, none of the

13 documentary evidence referenced in the parties' briefs is located

14 in this District.  The books and records concerning the selection

15 process for the Plant Manager position in Akron are maintained and

16 administered in the Postal Service's Eastern Area offices in

17 Pittsburgh.  Breault Decl. ¶ 3.  In addition, Plaintiff's

18 employment files and the files related to his previous EEOC

19 complaints are kept in Denver, Colorado and Ashburn, Virginia.[4]

20 See Resp. (doc. # 10) at 2.  Although the various records are all

21 located outside the Northern District of Ohio, the Court finds that

22 they would be more conveniently transported to that venue in lieu

23 

24     [4]  The United States correctly notes that the Title VII venue
25 statute, 42 U.S.C. § 2000e-5(f)(3), is only concerned with those
   records relating to the alleged unlawful employment practice.  See
26 Reply (doc. # 11) at 3.  However, under section 1404(a), the Court
   must consider the ease of access to all relevant sources of proof.
27 In this instance, although Plaintiff's employment files and EEOC
   filings are incapable of establishing venue, they may nevertheless
28 become relevant for other purposes at trial.

1  of Arizona.  Moreover, in the case at hand, transfer would most
2  likely improve rather than impede Plaintiff's access to the stated
3  sources of proof.  For example, should the EEOC filings become
4  relevant to Plaintiff's Title VII claim of retaliation, transfer
5  would actually alleviate any inconvenience to Plaintiff of locating
6  and transporting the appropriate files from Virginia, which is much
7  nearer to the Northern District of Ohio than to this District.
8  Accordingly, the Court finds that this factor also favors transfer.
9       In sum, the Court begins from a position affording great
10  deference to Plaintiff's choice of forum on account of the more
11  permissive venue provisions of Title VII.  However, this deference
12  can be overcome by a particularly strong showing that the
13  conveniences favor transfer, and the Court finds that the United
14  States has met this heavy burden here.  From the evidence
15  presented, the Court concludes that the convenience of the
16  witnesses, the availability of compulsory process, and the ease of
17  access to sources of proof all point toward the Northern District
18  of Ohio as the most appropriate venue for this case.  Therefore,
19  the United States' motion to transfer (doc. # 9) will be granted.
20       **B. Motion to Dismiss for Improper Venue**
21       Also before the Court is the United States' motion to dismiss
22  (doc. # 9) pursuant to Rule 12(b)(3) of the Federal Rules of Civil
23  Procedure, which allows a party to seek dismissal of a complaint if
24  the action was initiated in an improper venue.  Fed. R. Civ. P.
25  12(b)(3).  As discussed above at Part II.A.1.b, supra, the evidence
26  before the Court shows that the District of Arizona is a proper
27  venue for Plaintiff's Title VII claim, a fact which would support a
28  denial of the Rule 12(b)(3) motion on its merits.  In light of the

1   Court's order transferring this case to the Northern District of

2   Ohio pursuant to 28 U.S.C. § 1404(a), however, the Rule 12(b)(3)

3   motion must be denied as moot.

4   **III. CONCLUSION**

5       In light of the foregoing analysis, the Court finds that venue

6   would be proper in the District of Arizona as well as the Northern

7   District of Ohio for both the ADEA claim and the Title VII claim of

8   Plaintiff's Complaint.  However, the Court concludes that, pursuant

9   to 28 U.S.C. § 1404(a), the case should be transferred to the

10  Northern District of Ohio for, <u>inter alia</u>, the convenience of the

11  witnesses.  Therefore,

12      IT IS ORDERED that the United States' Motion to Dismiss for

13  Improper Venue, or in the Alternative to Transfer Case (doc. # 9)

14  is GRANTED in part and DENIED in part.

15      IT IS FURTHER ORDERED that the United States' motion to

16  transfer venue pursuant to 28 U.S.C. § 1404(a) (doc. # 9) is

17  GRANTED.

18      IT IS FURTHER ORDERED that the United States' motion to

19  dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3) (doc.

20  # 9) is DENIED as moot.

21      IT IS FURTHER ORDERED that the United States' Motion to

22  Disregard Plaintiff's Additional Response to Defendant's Motion to

23  Dismiss (doc. # 13) is construed as a request to file a sur-reply

24  to Plaintiff's Response to Defendant's Second Motion to Dismiss or

25  Transfer Case to Ohio (doc. # 12) and is DENIED as moot.

26      IT IS FINALLY ORDERED directing the Clerk of the Court to

27  . . .

28

1   transfer this action to the Northern District of Ohio.

2        DATED this 10th day of February, 2006.

3

4

5   _____
    Robert C. Broomfield

6        Senior United States District Judge

7

8   Copies to counsel of record and plaintiff <u>pro se</u>

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28